Lisa A. Messner (OH #0074034 – Admitted *Pro Hac Vice*)
Helen Mac Murray (OH #0038782 - Admitted *Pro Hac Vice*)
Mac Murray & Shuster LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
Phone: (614) 939-9955

David J. Kaminski, Esq., (SBN 128509) – Local Counsel
CARLSON & MESSER, LLP
5901 West Century Boulevard, Suite 1200
Los Angeles, CA 90045
Phone: (310) 242-2200

*Attorneys for Defendants Judith Noh d/b/a Student Loan Pro,*
*Judith Noh as an individual, Syed Faisal Gilani, and FNZA Marketing, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. SACV 8:21-cv-00488-JWH (ADSx) |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES** |
| v. | |
| Judith Noh d/b/a Student Loan Pro, Judith Noh as an individual, Syed Faisal Gilani and FNZA Marketing, LLC, | |
| Defendants. | **Date:   February 17, 2023**<br>**Time:   9:00 a.m.** |
| | **Discovery Cutoff: March 31, 2023** |
| | **Pretrial Conference: July 21, 2023** |
| | **Trial Date: August 7, 2023** |

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

i

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 17, 2023, or as soon thereafter as this matter may be heard, Defendants will and hereby do move this Court to dismiss Plaintiff's Complaint. This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 2, 2022.

This corrected Motion is made in order to comply with the Parties' agreed upon briefing schedule, which requires Defendants' Motion to be made on or before December 15, 2022, and to remedy filing deficiencies prior to the agreed upon filing deadline. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

ii

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTS AS ALLEGED IN THE COMPLAINT .................................................1

LAW AND ARGUMENT ....................................................................................2

I)   Standard of review..................................................................................2

II)  Historical accounting of separation of powers and origins of the power of the purse 3

   a.   Historical background ........................................................................3

   b.   The Framers implemented Constitutional protections to prevent unchecked government authority. ...........................................................................4

III) The Appropriations Clause.....................................................................6

IV) The CFPB's anomalous double-insulated funding structure is unconstitutional.......7

   a.   Overview of the CFPB .......................................................................8

   b.   The CFPB's anomalous double-insulated funding structure ..................8

   c.   The CFPB's funding structure violates the Appropriations Clause and is unconstitutional....................................................................................11

V)   The only proper remedy is to dismiss the CFPB's action. ......................13

VI) The Bureau's arguments contra are likely to be unavailing.....................16

   a.   The CFPB's funding structure is not constitutional simply because it was funded by Congress........................................................................................16

   b.   That Congress retains power to modify the CFPB is immaterial. .........17

   c.   The CFPB lacks comparability to other agencies, and its funding structure is wholly unique and unconstitutional.....................................................19

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

d.    The authority upon which the CFPB likely will rely are not binding and do not address the issue before this Court. ...................................................................20

CONCLUSION ...................................................................................................22

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

iv

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..................................................................................................3

*Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).........................3

*CFPB v. Morgan Drexen Inc.,* 60 F. Supp. 3d 1082 (C.D. Cal. 2014) ......................21, 22

*Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321, 57 S. Ct. 764, 770 (1937).......17

*Clinton v. New York*, 524 U.S. 417, 118 S. Ct. 2091 (1998)............................................18

*Cmty. Fin. Servs. Ass'n of Am., Ltd.v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 635 (5th Cir. 2022)...............................................................................................................passim

*Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021) ......................................................14, 15

*Collins v. Yellen*, 210 L. Ed. 2d 432, 141 S. Ct. 1761, 1788 & n.23 (2021) ....................14

*Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218 at 225 (5th Cir. 2022).......................................................................................................................passim

*F.E.V. v. City of Anaheim*, Case No. SACV101608PASHX, 2011 WL 13227795, at *2 (C.D. Cal. Mar. 21, 2011)................................................................................................2

*Milbeck v. TrueCar, Inc.*, Case No. 218CV02612SVWAGR, 2019 WL 476004 at *1 (C.D. Cal. Feb. 5, 2019) ................................................................................................3

*Morrison v. Olson*, 487, U.S. 654, 693, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988).............3

*New York v. United States*, 505 U.S. at 182, 112 S. Ct. at 2431 .......................................18

*Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424, 110 S. Ct. 2465, 2471 (1990) .......17

*OPM v. Richmond*, 496 U.S. 414 at 424-425 (1990)........................................................7

*Seila Law, LLC v. Consumer Financial Protection Bureau*, 207 L. Ed. 2d 494, 140 S. Ct. 2183 (2020) ...............................................................................................................passim

*Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 362 (5th Cir. 2021) .................5

*U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1347 (D.C. Cir. 2012)...............................21

*United States v. Cox*, 342 F.2d 167, 190 (5th Cir. 1965).....................................................3

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

v

**Other Authorities**

Congress' Power of the Purse, 97 Yale L.J. 1343, 1349 (1988) .................................7, 16

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561, U.S. 477, 504 at *505, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010) .................................................................................19

*Independence, Congressional Weakness, and the Importance of Appointment: The Impact of Combining Budgetary Autonomy with Removal Protection*, 125 Harv. L. Rev. 1822, 1831 (2012) ................................................................................................................19

The Federalist No. 48 (J. Madison) ..............................................................................5, 6

The Federalist No. 51 (J. Madison) ..................................................................................7

The Spirit of the Laws bk. XI, ch. IV (1772)....................................................................4

**Rules**

12 U.S.C. § 225 ...............................................................................................................19

12 U.S.C. § 5301 ................................................................................................................8

12 U.S.C. § 5481 ..............................................................................................................10

12 U.S.C. § 5491 ................................................................................................................8

12 U.S.C. § 5497(a) ...........................................................................................................9

12 U.S.C. §§ 1811, 1817 ..................................................................................................19

12 U.S.C. §§ 5536(a), 5564, 5565 .................................................................................1, 2

12 U.S.C.§ 5561 .................................................................................................................8

16 CFR § 310.1 ..................................................................................................................1

Fed. R. Civ. P. 8(a)............................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1, 2, 10

Federal Rule of Evidence 201 .........................................................................................10

**Constitutional Provisions**

Congress's Constitution: Legislative Authority and the Separation of Powers 47 (2017)..5

Constitution of the United States § 1348 (3d ed. 1858) ....................................................7

Constitution. *Id*. at I, § 8 .................................................................................................6

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

vi

U.S. Const. art. I, § 7................................................................................6

U.S. Const. art. I, § 9....................................................................4, 13, 17

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

vii

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

## INTRODUCTION

Defendants Judith Noh d/b/a Student Loan Pro, Judith Noh as an individual, Syed Faisal Gilani, and FNZA Marketing, LLC., (collectively "Defendants") submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the Complaint filed by the Consumer Financial Protection Bureau ("Plaintiff," "CFPB," or the "Bureau")(ECF No. 1). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTS AS ALLEGED IN THE COMPLAINT

The CFPB initiated this enforcement action on March 16, 2022 and alleged that Defendants, *inter alia*, charged and collected unlawful advance fees while engaged in the marketing of debt-relief services. (ECF No. 1 at ¶¶1; 15-19; 28; 31; 41). The Bureau pleads that these alleged actions constitute violations of the Telemarketing Sales Rule, and Consumer Financial Protection Act of 2010 (alternatively known as Title X of the Dodd-Frank Act). *Id.* at ¶43-81; see also 16 CFR § 310.1 *et seq.*; 12 U.S.C. §§ 5536(a), 5564, 5565. The CFPB alleges that it is entitled to bring this enforcement action by law and seeks disgorgement or compensation by unjust enrichment on the basis of the CFPB's authority

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

1

and jurisdiction over this matter. (Dkt. No. 1 at ¶¶ 1; 82-83; see also U.S.C. § 5565(a)(2)(D)).

Even accepting the CFPB's allegations as true, the CFPB's Complaint fails to state a claim upon which relief can be granted. Critically fatal to the claims asserted herein, the CFPB derives the funds for this enforcement action from an impermissible financing scheme contrived in violation of the Appropriations Clause and the Constitutionally mandated separation of powers. As explained below, this Constitutional defect fundamentally renders the CFPB unconstitutional. Accordingly, Defendants respectfully request the Court to dismiss Plaintiff's Complaint with prejudice.

## LAW AND ARGUMENT

### I)    Standard of review

Under the Federal Rules of Civil Procedure, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Federal Rules permit a court to dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also *F.E.V. v. City of Anaheim*, Case No. SACV101608PASHX, 2011 WL 13227795, at *2 (C.D. Cal. Mar. 21, 2011).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

2

face. *Milbeck v. TrueCar, Inc.*, Case No. 218CV02612SVWAGR, 2019 WL 476004 at *1 (C.D. Cal. Feb. 5, 2019), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II) Historical accounting of separation of powers and origins of the power of the purse

### a. Historical background

The Framers of the Constitution intended to design a system of governance that diffused power from central authority and checked the excesses of tyranny.  This "system of separated powers and checks and balances established in the Constitution was regarded by the Framers as 'a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" *Cmty. Fin. Servs. Ass'n of Am., Ltd.v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 635 (5th Cir. 2022), quoting *Morrison v. Olson*, 487, U.S. 654, 693, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)).

The separation of powers is a foundational precept of the American form of governance, intended to safeguard the preservation of liberty and personal autonomy against the encroaching excesses of governmental despotism.  Indeed, "[i]f there is one aspect of the doctrine of Separation of Powers that the Founding Fathers agreed upon, it is the principle, as Montesquieu stated it: '[t]o prevent the abuse of power, it is necessary that by the very disposition of things, power should be a check to power.'" *Cmty. Fin. Servs. Ass'n of Am., Ltd.* at *635 quoting *United States v. Cox*, 342 F.2d 167, 190 (5th Cir. 1965)

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

3

(Wisdom, J., concurring) (quoting Baron de Montesquieu, The Spirit of the Laws bk. XI, ch. IV (1772)).

      b.  <u>The Framers implemented Constitutional protections to prevent unchecked government authority.</u>

The Framers fully intended to guard against the evils flowing from the excesses of unchecked authority. One primary way the Framer's sought to preserve the separation of powers amongst the three branches of government was by gifting the legislature- *i.e.*, Congress- exclusive power over the appropriations of federal funds from the Treasury. U.S. Const. art. I, § 9.   This unfettered ability to disburse Treasury funds has been colloquially and historically referred to as Congress's "power of the purse," and "has its pedigree in the English Revolution." *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218 at 225 (5th Cir. 2022) (Jones E., concurring).

Prior to the seventeenth century, the king generally had unimpeded ability to expend funds as he saw fit.  "Much of the king's "ordinary" revenue during this period was derived from preexisting levies, or "granted by parliament, by way of purchase or exchange for such of the king's inherent hereditary" rights." *All Am. Check Cashing, Inc.* at 226 (Jones E., concurring) quoting William Blackstone, Commentaries at *271. Over time, however, the king sought additional revenues for royal governance and turned to "extraordinary sources of revenue, which meant taxation, and, therefore, parliamentary consent." *All Am. Check Cashing, Inc.* at *226 citing William Blackstone, Commentaries at *297.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

4

"The ensuing struggle between the crown and parliament over extraordinary revenues… contributed to one king's beheading, another's deposition, and, eventually, the English Revolution." *All Am. Check Cashing, Inc.* at *226, citing generally Josh Chafetz, Congress's Constitution: Legislative Authority and the Separation of Powers 47 (2017), *supra* note 17, at 47-51. The Revolution, in turn, led to the Revolutionary Settlement wherein "parliament solidified its supremacy over the purse by eliminating virtually all of the crown's sources of ordinary revenue and, in the English Bill of Rights, prohibiting prerogative taxation." *All Am. Check Cashing, Inc.* at *226 (Jones E., concurring).

The Framer's desire to gift the legislature exclusive control over funding as a check on the executive can be fairly traced to the royal profligacy of this period. Consequently, by "[d]rawing on the British experience, the Framers "carefully separate[d] the 'purse' from the 'sword' by assigning to Congress and Congress alone the power of the purse." *Cmty. Fin. Servs. Ass'n of Am.* At *635 quoting *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 362 (5th Cir. 2021). "The Framers' reasoning was twofold. First, they viewed Congress's exclusive "power over the purse" as an indispensable check on "the overgrown prerogatives of the other branches of the government."" *Cmty. Fin. Servs. Ass'n of Am.* at *636 quoting The Federalist No. 58 (J. Madison). Second, "the Framers also believed that vesting Congress with control over fiscal matters was the best means of ensuring transparency and accountability to the people." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* at *636; see also The Federalist No. 48 (J. Madison). Finally, the Framers believed

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

5

that in order for "Congress's power of the purse to meaningfully restrain the executive, appropriations to the executive must be temporally bound." *All Am. Check Cashing, Inc.* at \*231-232 (Jones E., concurring).

In short, historical precedent and analysis reveals the Framer's belief that "power over the purse may, in fact, be regarded as the most complete and effectual weapon with which any constitution can arm the immediate representatives of the people, for obtaining a redress of every grievance, and for carrying into effect every just and salutary measure." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* at \*636, quoting The Federalist No. 58 (J. Madison). However, Congress ran afoul of this bedrock principle by relinquishing its power of the purse to the CFPB. Such relinquishment entirely insulates the CFPB from Congressional oversight via two layers of fiscal independence and violates the Appropriations Clause.

### III)   The Appropriations Clause

The text of the Constitution clearly enumerates that Congress possesses ultimate authority over the appropriation of monies. First, even before enumerating how legislation becomes law (i.e., passage by both houses of Congress and presentment to the President for signature), the Constitution provides that "[a]ll Bills for raising Revenue shall originate in the House of Representatives . ... ." U.S. Const. art. I, § 7, cl. 1. It then grants the general authority "[t]o lay and collect Taxes" and spend public funds for various ends—the first power positively granted to Congress by the Constitution. *Id.* at I, § 8, cl. 1.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

6

The Appropriations Clause's "straightforward and explicit command" ensures Congress' exclusive power over the federal purse, and makes clear that "[a]ny exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." *Cmty. Fin. Servs. Ass'n of Am., Ltd* at *637 quoting *OPM v. Richmond*, 496 U.S. 414 at 424-425 (1990). Of equal importance is what the clause "takes away from Congress: the option not to require legislative appropriations prior to expenditure." Kate Stith, Congress' Power of the Purse, 97 Yale L.J. 1343, 1349 (1988).

The Appropriations Clause thus embodies the Framers' objectives of maintaining "the necessary partition among the several departments," and ensuring transparency and accountability between the people and their government. *Cmty. Fin. Servs. Ass'n of Am., Ltd.* at *638 quoting The Federalist No. 51 (J. Madison). "It is to secure regularity, punctuality, and fidelity, in the disbursements of the public money…If it were otherwise, the executive would possess an unbounded power over the public purse of the nation; and might apply all its moneyed resources at his pleasure." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* at *637 quoting Joseph Story, Commentaries on the Constitution of the United States § 1348 (3d ed. 1858).

**IV)   The CFPB's anomalous double-insulated funding structure is unconstitutional.**

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

7

### a.  Overview of the CFPB

The CFPB is an administrative agency which was created and authorized by the Dodd-Frank Act. 12 U.S.C. § 5491. Unlike most agencies, the CFPB is not led by a multimember board or commission.  Instead, the CFPB is led by a single Director serving a five-year term who, following the Supreme Court's ruling in *Seila Law*, is removable only for cause. See *Seila Law, LLC v. Consumer Financial Protection Bureau*, 207 L. Ed. 2d 494, 140 S. Ct. 2183 (2020). The CFPB also possesses a wide-ranging amalgamation of legislative, executive, and judicial powers.  Specifically, the agency retains authority to issue subpoenas and civil investigative demands, conduct investigations, participate in administrative adjudications, and prosecute civil actions in federal court.  See 12 U.S.C. § 5301 *et seq*. The Bureau also possesses the ability to seek wide-ranging and varied damages in the form restitution, disgorgement, injunctive relief, and large civil penalties of up to $1,000,000 a day for each day a violation occurs. See *e.g.* 12 U.S.C.§ 5561 *et seq*.

These abnormalities would be eye-popping on their own, but the CFPB's peculiarities do not end there. Significantly, and most saliently, the CFPB is heavily and unconstitutionally insulated from the ordinary congressional appropriations process.

### b.  The CFPB's anomalous double-insulated funding structure

The CFPB is subject to a unique, "self-actualizing, perpetual funding mechanism[]" far removed from the constitutional protections and safeguards of the appropriations clause." *Cmty. Fin. Servs. Ass'n of Am., Ltd* at *638. While the overwhelming majority of

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

8

executive agencies rely on annual Congressional appropriations for funding, the CFPB does not. See 12 U.S.C. § 5497(a).  Instead, the CFPB utilizes a double-insulated structure that impermissibly violates the appropriations clause.  See generally *Cmty. Fin. Servs. Ass'n of Am., Ltd.*

First, the CFPB receives its funding directly from the Federal Reserve rather than Congress. 12 U.S.C. § 5497(a). The CFPB's Director merely requisitions these funds on a yearly basis, subject only to the requirement his demand not exceed 12% of the Reserve's "total operating expenses." 12 U.S.C. § 5497(a)(1)–(2). The Federal Reserve must grant these yearly demands. *Id*. Second, the Federal Reserve is itself funded through bank assessments instead of through the normal appropriations process. *Seila Law*, 140 S. Ct. at 2194. The CFPB is therefore *twice* removed from the usual permissible appropriations process and subject to no Congressional oversight in terms of how it raises and disburses funds.  "This double insulation from Congress's purse strings" "is "unprecedented" across the government." *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 639 quoting *All Am. Check Cashing*, 33 F.4th at 225 (Jones, J., concurring).

The CFPB eludes Congressional oversight at nearly every turn.  Even its funds are not held in a Treasury account, but rather the "'Bureau of Consumer Financial Protection Fund," which "shall be maintained and established at a Federal [R]eserve bank," and which is "under the control of the Director." 12 U.S.C. § 5497(b)(1); see also § 5497(c)(1).

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

9

Emphasizing the CFPB's fiscal autonomy, these funds are "not be construed to be Government funds or appropriated monies." *Id*. § 5497(c)(2).

This is in direct contrast to other powerful and roughly analogous executive agencies such as the Federal Trade Commission ("FTC").  Like the CFPB, the FTC is a consumer protection enforcement agency wielding a mix of civil, criminal, and adjudicatory relief. Like the CFPB, the FTC has the stated goal of protecting consumers from unfair and deceptive acts. However, unlike the CFPB, the FTC receives its funds through the typical Congressional appropriations process.  Additionally, and despite joint authority over consumer protection concerns, the FTC's fiscal year 2022 budget of $433 million was dwarfed by the CFPB's approximately $1.7 billion budget.[1] Additionally, the FTC is unable to "roll over" these self-determined funds it draws *ad infinitum* in contrast to the CFPB, which is so able. *Comty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 639. The CFPB also enjoys wide-ranging jurisdiction over nearly the entire financial industry. See *e.g.* 12 U.S.C. § 5481 *et seq.* No other agency is permitted to behave in such an unchained and unaccountable manner, and the CFPB should be no exception.

---

[1]    USA Spending Consumer Financial Protection Bureau (CFPB) Funding, available at https://www.usaspending.gov/agency/consumer-financial-protection-bureau?fy=2022 (data through Sept. 29, 2022); USA Spending Federal Trade Commission (FTC) Funding, available at https://www.usaspending.gov/agency/federal-trade-commission?fy=2022 (data through Sept. 29, 2022). Pursuant to Fed. R. Evid. 201(b) the Court may take judicial notice of these facts upon a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6).

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

10

The practical effect of all of this can be simply stating: The CFPB is impermissibly insulated from Congressional oversight two times over and unites purse and sword in violation of the Appropriations Clause.

c. The CFPB's funding structure violates the Appropriations Clause and is unconstitutional.

The CFPB's budgetary independence "violates the separation of powers principle enshrined in the Appropriations Clause." *All Am. Check Cashing, Inc.*, 33 F4th 218, 221 (5th Cir. 2022). Its funding mechanism "cannot be reconciled with the Appropriations Clause and the clause's underpinning, the constitutional separation of powers." *Cmty. Fin. Servs. Ass'n of Am. Ltd.* 51 F.4th at 642.

The Fifth Circuit's recent decision in *Cmty. Fin. Servs. Ass'n of Am.* is instructive. In *Cmty. Fin. Servs. Ass'n of Am.*, a three-judge panel for the Fifth Circuit Court of Appeals held that the CFPB was unconstitutional because its double-insulated funding structure violated the Appropriations Clause and the Constitution's underlying separation of powers. *Cmty. Fin. Servs. Ass'n of Am., Ltd. V. Consumer Fin. Prot. Bureau*, 51 F. F.4th 616 (5th Cir. 2022).  In so doing the Court targeted the CFPB's unusual "self-actualizing, [and] perpetual funding mechanism." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* F.4th at 638. The Court opined that the CFPB "receives funding directly from the Federal Reserve…itself outside the appropriations process[,]" which has resulted in Congress "ced[ing] *direct* control…[and] also *indirect control*" over the agency's funding. *Id*. at *638-639 (emphasis in original).

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

11

While this alone "is in itself enough to give great pause…Congress went to even greater lengths to take the Bureau completely off the separation-of-powers books[]" by allowing the Bureau to sequester its ill-gotten gains in a war chest of its own design rather than in the Treasury Account. *Id.* at *639; citing 12 U.S.C. § 5497(b)(1). The Fifth Circuit held that these infirmities combined to create an "unprecedented" scenario that violated the Appropriations Clause. *Cmty. Fin. Servs. Ass'n of Am., Ltd.* F.4th at *639. As a result, "[b]y abandoning its "most complete and effectual" check on "the overgrown prerogatives of the other branches of the government" -indeed, by enabling them in the Bureau's Case-Congress ran afoul of the separation of powers embodied in the Appropriations Clause." *Id.* at *639-640.

The situation here is no different and the infirmities present in *Cmty. Fin. Servs. Ass'n of Am., Ltd.* continue to persist.  The CFPB still maintains its impermissible, double-insulated funding structure.  The agency remains outside of and separate from the Congressional budgeting process in violation of the Appropriations Clause.  The CFPB continues to violate the separation of powers underpinning our Constitutional order.

If Congress were the United States' Chief Financial Officer, then the CFPB could be thought of as a black box that receives its signed, blank check every single year.  Only, here, the CFO does not determine the CFPB's yearly "pay" because the agency's "funding is double-insulated on the front end." *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, at *639. Nor can the CFO relocate or spill excess funds over to the U.S. Treasury because the Bureau's funds

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

12

are "permanently available to [the Director] without any further Act of Congress," and are not "Government funds or appropriated monies." 12 U.S.C. § 5497(b)(1); § 5497(c)(1)-(c)(2).  The CFO cannot even audit these funds because the Director uses an "off-books charge card that rings up "[un]appropriated monies."" *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 639.  These monies are not even subject to the typical time limitations required by the separation of powers.  *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at fn. 14 citing *All Am. Check Cashing*, 33 F.4th at 238.  Finally, following the ruling in *Seila Law*, the Director is now removable at the President's pleasure further unifying the purse and the sword within the purview of the executive branch.  See *Seila Law, LLC* 140 S. Ct. 2183.

The Constitution flatly mandates that "[n]o money shall be drawn from the Treasury, *but in Consequence of Appropriations* made by law." U.S. Const. art I, § 9, cl. 7 (emphasis added)."  The Bureau's funding mechanism violates this essential maxim, and "[w]herever the line between a constitutionally and unconstitutionally funded agency may be, [the CFPB's] unprecedented arrangement crosses it." *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at *639. The CFPB is unconstitutional, and this action should be dismissed as the fruits of the poisonous tree, an enforcement action financed wholly by an unconstitutional funding mechanism.

## V)      The only proper remedy is to dismiss the CFPB's action.

The remaining issue is corrective, and the proper remedy for the CFPB's underlying constitutional infirmity, here, is to dismiss this case.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

13

In terms of the proper remedy, not every separation of powers violation is created equal. *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218 at 241 (5th Cir. 2022) (Jones E., concurring). To this point "[t]he proper remedy in a separation of powers case depends on the nature of the underlying problem." *Id.* Specifically, when "a Government actor's exercise of power" flows from a constitutionally defective source, courts must invalidate the action.  See *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021).

Here, the underlying problem stems from an unconstitutional funding scheme enacted in violation of the Appropriations Clause and infringing upon the Constitution's separation of powers.  Therefore, the Constitutional defect is fundamental in nature, going to the very heart of the CFPB's construction, requiring dismissal of this action.

The present circumstances are analogous to that in *Cmty. Fin. Servs. Ass'n of Am., Ltd.*  In holding that the CFPB was funded in violation of the Appropriations Clause and the separation of powers, the Fifth Circuit vacated the Bureau's Payday Lending Rule. *Cmty. Fin. Servs. Ass'n of Am., Ltd.* 51 F.4th at *644. The Court found that the answer turned "on the distinction between the Bureau's *power* to take the challenged action and the *funding* that would enable the exercise of that power." *Id.* at 643 (emphasis in original).

Thus, while the unconstitutional funding mechanism does not strip the Director of the power to undertake his responsibilities, it "deprive[s] the Bureau of the lawful money necessary to fulfill those responsibilities." *Id*. at *643 citing *Collins v. Yellen*, 210 L. Ed. 2d 432, 141 S. Ct. 1761, 1788 & n.23 (2021). The Fifth Circuit also sustained a showing

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

14

that the "unconstitutional…[funding] provision inflicted harm," because promulgation of the Payday Lending Rule was "wholly drawn through the agency's unconstitutional funding scheme[.]" *Cmty. Fin. Servs. Ass'n of Am., Ltd.* 51 F.4th at *643 quoting *Collins* at 1788-89.

This enforcement action should be dismissed for identical reasons.   This case similarly turns on the distinction between the Bureau's power to undertake the present lawsuit, and its ability to fund the present lawsuit.   Thus, while the CFPB may have the necessary authority, it lacks the "lawful money necessary" to pursue this action. See *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at *643. It is also clear that the unconstitutional funding provision led to the harm at issue because, absent such mechanism, the CFPB wouldn't have even possessed funds to file this lawsuit. Thus, "there is a linear nexus between the infirm provision (the Bureau's funding mechanism) and the challenged action[,]" (the present lawsuit) and the action should be dismissed.

Any other remedy is insufficient.   Every action undertaken by the CFPB in the present lawsuit has been financed via this unconstitutional funding mechanism and exists as fruit of the poisonous tree. In contrast to *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, where plaintiffs simply challenged promulgation of the Payday Lending Rule, there is no way to cleanly or effectively "cut off" the unconstitutional portions of the CFPB's lawsuit by vacating a particular rule.   Thus, it is impracticable to "sever" some of the CFPB's claims

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

15

on this basis.  Dismissing the entire action exists as the only practicable and equitable remedy.

"To remedy the separation of powers violation arising from the CFPB's budgetary independence, I see no other option than dismissing the enforcement action[.]" *All Am. Check Cashing, Inc.* 33 F.4th at *242. "The reason is simple. Just as a government actor cannot exercise power that the actor does not lawfully possess, so, too, a government actor cannot exercise even its lawful authority using money the actor cannot lawfully spend." *Id.* Therefore, "[b]ecause the CFPB has prosecuted this enforcement action using funds derived without a constitutionally footed appropriation or oversight, the court should dismiss the enforcement action" against Defendant. *Id.*

**VI)   The Bureau's arguments contra are likely to be unavailing.[2]**

   a.   <u>The CFPB's funding structure is not constitutional simply because it was funded by Congress.</u>

The CFPB will likely argue "that there is no constitutional infirmity because its funding scheme was enacted by Congress." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* 51 F.4th at *640.

This argument effectively "contends that because Congress spun the agency's funding mechanism into motion when it passed the Act, voila!—the Appropriations Clause

---

[2] The CFPB's probable arguments *contra* have been identified by reference to the CFPB's appellee brief in *Cmty. Fin. Servs. Ass'n of Am., Ltd*.  See *Cmty. Fin. Servs. Ass'n of Am., Ltd.v. Consumer Fin. Prot. Bureau*, 51 F.4th 616 at 635 (5th Cir. 2022), *Brief of Appellees*, Doc. No. 00516133326.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

is satisfied." *Id.* In doing so the CFPB may cite Supreme Court precedent stating that the Appropriations Clause "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* 51 F.4th at *640 quoting *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424, 110 S. Ct. 2465, 2471 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321, 57 S. Ct. 764, 770 (1937)).

However, this interpretation "misreads not only Supreme Court precedent but also the plain text of the Appropriations Clause." *Cmty. Fin. Servs. Ass'n of Am., Ltd.* 51 F.4th at *640. First, an actual *appropriation*, not mere enabling law, is required by the Appropriations Clause.  U.S. Const. Art. I, § 9 (requiring fund dispersal "in Consequence of Appropriations made by law"). Second, were an enabling law itself sufficient, no executive agency's funding structure could ever run afoul of the Appropriations Clause because it would have, by definition, been enacted by Congress. See also *Cmty. Fin. Servs. Ass'n of Am., Ltd.* 51 4th at *640. Such interpretation produces an absurd result, gutting the Appropriations Clause and rendering it surplusage.

b.  That Congress retains power to modify the CFPB is immaterial.

The CFPB may additionally argue that Congress preserves the power to modify the CFPB's funding structure and that, by doing so, Congress has retained *de facto* power of the purse over the agency's appropriations structure.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

17

This is immaterial for three primary reasons.  First, were this the case, no law could *ever* run afoul of Article I because Congress would ultimately remain capable of fixing the statute.  However, the separation of powers does not depend on whether "the encroached-upon branch approves the encroachment." *New York v. United States*, 505 U.S. at 182, 112 S. Ct. at 2431. Otherwise, similar theories could be used to advance other constitutional schemes such as the Line-Item Veto Act. See *Clinton v. New York*, 524 U.S. 417, 118 S. Ct. 2091 (1998).

Second, this argument "turns the Appropriations Clause on its head."  *All Am. Check Cashing, Inc.* 33 F.4th at *238. The Appropriations Clause requires Congress to appropriate funds to executive agencies.  However, [t]he CFPB's funding structure reverses the baseline; the statute entitles the CFPB to spend public funds—forever—unless *prohibited* by Congress." *Id.* at *238 (emphasis in original).

Third, while Congress may technically retain ability to alter the CFPB's unconstitutional structure, the barrier to doing so "is nearly insurmountable." *Id.* In reality, "[a]ny effort to alter the funding provision must overcome a crowded legislative agenda, obtain the support of congressional leadership and both houses, and survive an almost certain presidential veto." *All Am. Check Cashing, Inc.* 33 F.4th at *238 quoting *Independence, Congressional Weakness, and the Importance of Appointment: The Impact of Combining Budgetary Autonomy with Removal Protection*, 125 Harv. L. Rev. 1822,

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

18

1831 (2012). The practical result is legislative gridlock "that does little or nothing to blunt

this affront to the separation of powers." *All Am. Check Cashing, Inc.* 33 F.4th at *239.

  c. <u>The CFPB lacks comparability to other agencies, and its funding structure is
wholly unique and unconstitutional.</u>

  The CFPB additionally may contend that its funding structure is similar to other

administrative agencies and, therefore, permissible.

  Specifically, after years of litigation and analysis, the CFPB points to "Federal

Reserve Board, the Federal Deposit Insurance Corporation [FDIC], and the Office of the

Comptroller of the Currency [OCC]. But those agencies are hardly comparable." *All Am.*

*Check Cashing, Inc.* 33 F.4th at *235. Indeed, there is a severe "lack of historical precedent"

to support the CFPB. *All Am. Check Cashing, Inc.* 33 F.4th at *238 quoting *Free Enter.*

*Fund v. Pub. Co. Acct. Oversight Bd.*, 561, U.S. 477, 504 at *505, 130 S. Ct. 3138, 177 L.

Ed. 2d 706 (2010).

  First, the Federal Reserve seeks to maintain maximum employment, stable prices,

and appropriate interest rates. 12 U.S.C. § 225(a). The FDIC insures bank deposits and

examines financial insureds. 12 U.S.C. §§ 1811, 1817.  The OCC supervises covered

national financial institutions to ensure access to financial services and equal treatment of

customers.  *All Am. Check Cashing, Inc.* 33 F.4th at *235-236.  The CFPB, by contrast,

maintains a distinctively executive focus and acts "as a mini legislature, prosecutor, and

court[.]" *All Am. Check Cashing, Inc.* 33 F.4th at *237.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

19

Second, the Federal Reserve and FDIC operate as independent agencies "thereby moderating the threat of the separation of powers created by combining the power of the purse and sword." *All Am. Check Cashing, Inc.* 33 F.4th at *236. Furthermore, these three organizations possess multimember leadership drawn from both parties.  The CFPB, in contrast, is subject to a single directorship structure and does not act as an independent agency.  The dangers arising from combining the sword and purse are therefore more acute within the CFPB, where the Director can wield unsized power and influence.

Finally, this threat is made more drastic "given the Director's post Seila Law dependence on the President[]."*All Am. Check Cashing, Inc.* 33 F.4th at *236.  The other identified agencies, in contrast, do not wield remotely comparable enforcement or regulatory authority. "Thus, the CFPB's budgetary independence is "an innovation with no foothold in history or tradition." *All Am. Check Cashing, Inc.* 33 F.4th at *236 quoting *Seila Law*, 140 S Ct. at 2202."

> d. <u>The authority upon which the CFPB likely will rely are not binding and do not address the issue before this Court.</u>

The CFPB may argue that prior cases have settled the issue of the constitutionality of the CFPB's funding mechanism.[3] However, none of those decisions bind this Court.

---

[3] *See, e.g., PHH Corp.*, 881 F.3d at 95-96; *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 57 (D.R.I. 2020); *240 *CFPB v. Fair Collections & Outsourcing, Inc.*, No. 8:19-cv-2817, 2020 WL 7043847, at *7-9 (D. Md. Nov. 30, 2020); *CFPB v. Think Finance LLC*, No. 17-cv-127, 2018 WL 3707911, at *1-2 (D. Mont. Aug. 3, 2018); *CFPB v. Navient Corp.*, No. 3:17-cv-101, 2017 WL 3380530, at *16 (M.D. Pa. Aug. 4, 2017); *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 896-97 (S.D. Ind. 2015);

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

More importantly, no decision seriously wrestles with the overwhelming separation of powers problem discussed above. *All Am. Check Cashing, Inc.*, 33 F.4th at 240.

The CFPB may also point to *CFPB v. Morgan Drexen Inc.*, to support the constitutionality of its funding mechanism. 60 F. Supp. 3d 1082 (C.D. Cal. 2014). While, *Morgan Drexen Inc.* examined this issue, it did so in cursory manner stating the Appropriations Clause "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Morgan Drexen Inc.*, 60 F. Supp. 3d at *1089. Therefore, without a fulsome analysis, the Court found the CFPB's structure permissible because "no funds have been appropriated from the Treasury." *Id.*

However, that CFPB funds do not belong to the Treasury "is the rub" and presents the entire Constitutional conundrum. *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 640. As noted by the Fifth Circuit, which analyzed this exact issue, the fact that the CFPB derives funds from sources other than Congress is itself the issue that violates the Appropriations Clause - even if it complies with the text of the Clause in an overly technical, literal sense. Indeed, the entire point of the Clause is to address the fear that "the executive would possess an unbounded power over the public purse of the nation; and might apply all of its monied resources at his pleasure." *U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh J.).

Were executive agencies permitted to sidestep the Appropriations Clause merely by drawing funds from a source other than the Treasury, this would render the Appropriations

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

Clause hollow and meaningless.  Indeed, if the Appropriations Clause permits agencies to obtain and disburse funds in whatever manner they see fit so long as Treasury funds are not involved, what is to stop a future agency from siphoning social security funds, or pilfering Medicaid dollars as a funding source? What is to stop Congress from inventing increasingly novel funding mechanisms, completely detached from Congressional oversight and public accountability on this basis?  The answer is the Appropriations Clause.

With this analysis in mind, and the framework established by the Fifth Circuit, the result in *Morgan Drexen Inc.* cannot obtain here. Furthermore, the analysis in *Morgan Drexen Inc.* does not directly address the underlying separation of powers problem that arises from the CFPB's funding structure. See *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 640.  Lastly, and noteworthy, *Morgan Drexen Inc.* was decided before the ruling in *Seila Law, LLC* which exacerbated the CFPB's constitutional issues.

## CONCLUSION

The CFPB is subject to an unconstitutional double-insulated funding mechanism in violation of the Appropriations Clause and the Constitution's underlying separation of powers.  Because these infirmities render the CFPB unconstitutional, and for the reasons set forth herein, Defendants respectfully request the Court dismiss Plaintiff's Complaint with prejudice.

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

22

Respectfully submitted,

/s/ *Lisa A. Messner*

Lisa A. Messner
(OH #0074034 – Admitted *Pro Hac Vice)*
Helen Mac Murray
(OH #0038782 - Admitted *Pro Hac Vice*)
Mac Murray & Shuster LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
Tel: (614) 939-9955
Fax: (614) 939-9954
Email:  lmessner@mslawgroup.com
         hmacmurray@mslawgroup.com

David J. Kaminski, Esq., (SBN 128509) – Local Counsel
CARLSON & MESSER, LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, CA 90045
Tel: (310) 242-2200
Fax: (310) 242-2222
Email: kaminskid@cmtlaw.com

*Attorneys for Defendants Judith Noh*
*d/b/a Student Loan Pro, Judith Noh*
*as an individual, Syed Faisal Gilani, and FNZA Marketing, LLC*

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2022, I electronically filed the foregoing using CM/ECF, causing a Notice of Electronic Filing to be sent to all counsel of record.

/s/ *Lisa A. Messner*
Lisa A. Messner

DEFENDANTS' NOTICE OF MOTION AND DEFENDANTS' CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, RESITUTION, DISGORGEMENT, AND CIVIL MONEY PENALTIES

24