MARY K. WARREN (NY Reg. #2557684)
ALEXANDER JOHNSON (DC Bar #1780275)
KEVIN E. FRIEDL (NY Reg. # 5240080)
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Email: mary.warren@cfpb.gov
Phone: (202) 435-7815
Fax: (202) 435-7722

OWEN MARTIKAN, CA Bar #177104 - Local Counsel
301 Howard St., Suite 1200
San Francisco, CA 94105
Phone: (415) 844-9790
Email: owen.martikan@cfpb.gov

Attorneys for Plaintiff
Consumer Financial Protection Bureau

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>               Plaintiff,<br><br>        v.<br><br>Judith Noh d/b/a Student Loan Pro, Judith Noh as an individual, and Syed Faisal Gilani,<br><br>               Defendants, and<br><br>FNZA Marketing, LLC,<br><br>               Relief Defendant | Case No. 8:21-cv-00488-JWH (ADSx)<br><br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STAY**<br><br>Judge: The Hon. John W. Holcomb<br>Hearing Date: February 17, 2023<br>Time: 9:00 A.M.<br>Courtroom: 2<br><br>Discovery Cutoff: March 31, 2023<br>Pretrial Conference: July 21, 2023<br>Trial Date: August 7, 2023 |

# TABLE OF CONTENTS

Preliminary Statement..................................................................................................1

Background..................................................................................................................2

Legal Standards...........................................................................................................3

Argument......................................................................................................................4

   I.   The Court Should Deny the Motion to Dismiss as Untimely and Otherwise Improper .........................................................................................................................4

   II.  If the Court Instead Construes the Motion to Dismiss as One for Judgment on the Pleadings, It Should Deny the Motion as Meritless ...........................................5

     A.   The Bureau's Statutory Funding Mechanism Is Constitutional............................5

     B.   Defendants' Contrary Arguments Are Wrong .....................................................8

     C.   In Any Event, Dismissal Would Not Be the Proper Remedy for any Appropriations Clause Concern .......................................................................12

   III.  The Court Should Deny the Motion to Stay Proceedings ......................................13

     A.   Staying Proceedings Would Not Promote Judicial Economy or the Efficient Resolution of This Case .......................................................................14

     B.   A Stay Would Harm the Significant Public Interest and the Bureau's Interest in the Orderly and Prompt Resolution of this Action .......................................19

     C.   Allowing This Case to Move Forward in the Ordinary Course Would Cause Defendants no Cognizable Harm........................................................................20

Conclusion ................................................................................................................21

TABLE OF AUTHORITIES

**Cases**

*Adams v. Cole Haan, LLC*,
   No. 8:20-cv-00913-JWH, 2021 WL 4907248 (C.D. Cal. Mar. 1, 2021) ........................ 5

*Alpha Floors, Inc. v. Dyno Exch.*,
   No. 8:16-cv-932-JLS, 2016 WL 9211646 (C.D. Cal. Sept. 23, 2016) ............................ 4

*Aoki v. Gilbert*,
   No. 2:11-cv-02797-TLN, 2014 WL 3689345 (E.D. Cal. July 23, 2014) ........................ 4

*Avalonbay Communities, Inc. v. Contractors Bonding & Ins. Co.*,
   No. 2:21-cv-04389-SB, 2022 WL 2903142 (C.D. Cal. May 6, 2022) ........................... 20

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*,
   490 F.3d 718 (9th Cir. 2007) ...................................................................................... 19

*Caballero v. Fuerzas Armadas Revolucionarias De Colombia*,
   No. 2:20-CV-07602-JWH, 2021 WL 4353243 (C.D. Cal. May 13, 2021) ..................... 3

*CFPB v. All Am. Check Cashing, Inc.*,
   33 F.4th 218 (5th Cir. 2022) ........................................................................................ 8

*CFPB v. CashCall, Inc.*,
   35 F.4th 734 (9th Cir. 2022) ...................................................................................... 17

*CFPB v. Certified Forensic Loan Auditors, LLC*,
   No. 2:19-cv-07722-ODW, 2020 WL 1181499 (C.D. Cal. Feb. 21, 2020) .............. 16, 19

*CFPB v. Citizens Bank, N.A.*,
   504 F. Supp. 3d 39  (D.R.I. 2020) ................................................................................ 8

*CFPB v. Commonwealth Equity Grp., LLC*,
   No. 1:12-cv-10991 (D. Mass. Dec. 15, 2022) ............................................................. 16

*CFPB v. Community Financial Services Association of America, Ltd*.,
   No. 22-448 (U.S. cert. petition filed Nov. 14, 2022) ........................................ 1, 14, 16

*CFPB v. Ctr. for Excellence in Higher Educ.*,
   No. 2:19-cv-00877, 2022 WL 4182301 (D. Utah Sept. 13, 2022) ............................ 7, 15

*CFPB v. D & D Mktg., Inc.*,
No. 2:15-cv-9692-PSG, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016)......................1, 7

*CFPB v. Fair Collections & Outsourcing, Inc.*,
No. 8:19-cv-2817, 2020 WL 7043847 (D. Md. Nov. 30, 2020) ..........................8, 15, 16

*CFPB v. ITT Educ. Servs., Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015) ...............................................................................8

*CFPB v. Morgan Drexen, Inc.*,
60 F. Supp. 3d 1082 (C.D. Cal. 2014)..........................................................................1, 7

*CFPB v. Nationwide Biweekly Administration, Inc.*,
Nos. 18-15431, 18-15887 (9th Cir.) ..............................................................1, 13, 14, 17

*CFPB v. Navient Corp.*,
No. 3:17-cv-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) .........................................8

*CFPB v. Rosen*,
No. 2:21-cv-07492-VAP (C.D. Cal. Jan. 3, 2023) ..........................................................18

*CFPB v. Seila Law LLC*,
997 F.3d 837 (9th Cir. 2021) ..........................................................................................18

*CFPB v. Think Finance LLC*,
No. 17-cv-127, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) ...........................................8

*CFPB v. TransUnion*,
No. 1:22-cv-1880, 2022 WL 17082529 (N.D. Ill. Nov. 18, 2022) .........................1, 7, 16

*Cincinnati Soap Co. v. United States*,
301 U.S. 308 (1937) ..............................................................................................6, 7, 8, 9

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022)....................................................................................passim

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) .......................................................................................12, 13, 15, 16

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007)........................................................................................20

*Dworkin v. Hustler Mag. Inc.*,

867 F.2d 1188 (9th Cir. 1989) .................................................................................. 3

*Edwards v. Alorica, Inc.*,
No. 8:19-cv-02124-JWH, 2020 WL 11613847 (C.D. Cal. Dec. 2, 2020) ..................... 19

*Floyd v. Filson*,
949 F.3d 1128 (9th Cir. 2020) .............................................................................. 17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ................................................................................... 13, 15

*FTC v. Standard Oil Co. of California*,
449 U.S. 232 (1980) ............................................................................................ 21

*John Doe Co. v. CFPB*,
235 F. Supp. 3d 194 (D.D.C. 2017) ....................................................................... 19

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) .............................................................................. 2, 3, 18, 20

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ................................................................. 2, 3, 18, 20

*Mazal Grp., LLC v. Barak*,
No. 2:18-cv-4983-DMG, 2018 WL 11352629 (C.D. Cal. Dec. 27, 2018) ...................... 5

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ................................................................................. 3

*OPM v. Richmond*,
496 U.S. 414 (1990) .................................................................................... 1, 6, 8

*Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*,
No. 5:21-cv-01556-JWH, 2022 WL 2464859 (C.D. Cal. July 5, 2022) ......................... 4

*PHH Corp. v. CFPB*,
881 F.3d 75 (D.C. Cir. 2018) ................................................................................. 7

*Pipe Restoration Techs., LLC v. Pipeline Restoration Plumbing, Inc.*,
No. 8:13-cv-00499-CJC, 2015 WL 13918253 (C.D. Cal. Feb. 13, 2015) ..................... 18

*Prime Healthcare Servs.-San Dimas, LLC v. Price*,
No. 2:16-cv-08101-ODW, 2017 WL 10581094 (C.D. Cal. June 29, 2017) ................... 16

*Reeside v. Walker*,

  52 U.S. 272 (1850) ........................................................................................9

*Rop v. FHFA*,

  485 F. Supp. 3d 900 (W.D. Mich. 2020)......................................................15

*Seila Law LLC v. CFPB*,

  140 S. Ct. 2183 (2020) ..........................................................................passim

*Trujillo v. Morgan Truck Body, LLC.*,

  No. 5:21-cv-01873-JWH, 2022 WL 462631 (C.D. Cal. Feb. 14, 2022)............3

*Yong v. I.N.S.*,

  208 F.3d 1116 (9th Cir. 2000) ......................................................................17

**Statutes**

1 Stat. 232 (1792) ..............................................................................................7

2 Stat. 45 (1800) ................................................................................................7

12 Stat. 665 (1863) ............................................................................................7

38 Stat. 251 (1913) ..........................................................................................10

12 U.S.C. § 2 ...................................................................................................12

12 U.S.C. § 16 ............................................................................................7, 10

12 U.S.C. § 243 ................................................................................................7

12 U.S.C. § 244 ..............................................................................................10

12 U.S.C §§ 342-361 ........................................................................................9

12 U.S.C. § 481 ..............................................................................................10

12 U.S.C. § 1755 ..............................................................................................7

12 U.S.C. § 1815 ..............................................................................................7

12 U.S.C. § 1818 ............................................................................................11

12 U.S.C. § 1820 ..............................................................................................7

12 U.S.C. § 1828 ............................................................................................11

12 U.S.C. § 2250 ............................................................................................10

12 U.S.C. § 4512 ............................................................................................12

12 U.S.C. § 4516 ........................................................................................... 7

12 U.S.C. § 5491 ........................................................................................ 5, 9

12 U.S.C. § 5496 ......................................................................................... 11

12 U.S.C. § 5497 ................................................................................... passim

12 U.S.C. § 5536 ........................................................................................... 2

12 U.S.C. § 5581 ......................................................................................... 11

31 U.S.C. § 1349 ......................................................................................... 13

31 U.S.C. § 1350 ......................................................................................... 13

**Rules**

Fed. R. Civ. P. 12 .......................................................................................... 4

Fed. R. Civ. P. 12(b) ............................................................................... 3, 4, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................... 3, 4, 5

Fed. R. Civ. P. 12(c) ................................................................................... 3, 5

Fed. R. Civ. P. 12(g) .................................................................................. 4, 5

Fed. R. Civ. P. 12(g)(2) .............................................................................. 4, 5

Fed. R. Civ. P. 12(h)(2)(B) ............................................................................. 5

**Regulations**

16 C.F.R. § 310.3(b) ..................................................................................... 2

16 C.F.R. § 310.4(a)(5) .................................................................................. 2

**Other Authorities**

Committee on Appropriations, 1867-2008, S. Doc. No. 110-14 (2008) ........................... 11

Gov't Accountability Office, *Principles of Federal Appropriations Law* (4th ed. rev. 2016) ................................................................................................... 9, 10

U.S. Const. Art. I, § 5, cl. 2 ........................................................................... 11

U.S. Const. Art. I, § 8, cl. 12 .......................................................................... 6

U.S. Const. Art. I, § 9, cl. 7 ............................................................................ 6

## Preliminary Statement

Plaintiff Consumer Financial Protection Bureau (Bureau) brought this civil enforcement action to address violations of federal law by Defendants Judith Noh d/b/a Student Loan Pro (Student Loan Pro), Judith Noh, and Syed Gilani and to secure relief for student-loan borrowers harmed by Defendants' violations. Nearly two years into this litigation, with the parties nearing the end of discovery, Defendants have filed a Motion to Dismiss and a Motion to Stay, seeking to avoid—or at least postpone—final resolution of the Bureau's well-pleaded allegations. The Court should deny both motions.

Defendants' Motion to Dismiss argues, for the first time, that this case must be dismissed because Congress violated the Appropriations Clause when it passed a law authorizing the Bureau to draw and spend money on its operations. The Court should deny the Motion because it is grossly untimely and otherwise procedurally improper. In the alternative, the Court should deny the motion on the merits. Supreme Court precedent holds that the Appropriations Clause requires simply that "the payment of money from the Treasury must be authorized by a statute." *OPM v. Richmond*, 496 U.S. 414, 424 (1990). The Bureau's spending is so authorized, 12 U.S.C. § 5497, and Defendants do not argue otherwise. Thus, judges of this Court (and elsewhere) have readily rejected this line of attack and upheld the Bureau's funding. *E.g.*, *CFPB v. D & D Mktg.*, *Inc.*, No. 2:15-cv-9692-PSG, 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014); *CFPB v. TransUnion*, No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022).

Defendants' Motion to Stay seeks to halt all proceedings to await a decision either in *CFPB v. Nationwide Biweekly Administration, Inc.*, Nos. 18-15431, 18-15887 (9th Cir.), or in *CFPB v. Community Financial Services Association of America, Ltd*., No. 22-448 (U.S. cert. petition filed Nov. 14, 2022). The Court should deny this motion too. Defendants have not shown that the potentially lengthy delay they seek would promote the efficient resolution of this litigation. And while the purported efficiency benefits of a

stay are speculative at best, the harm to the Bureau and the public interest from a stay would be very real, including because a stay could complicate the Bureau's ongoing efforts to gather and preserve evidence relevant to Defendants' violations, some of which occurred more than seven years ago. Because a stay would harm others, binding precedent requires that Defendants must make out a "clear case" of hardship from being required to go forward. *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). Defendants have not made and cannot make that showing.

## Background

The Bureau filed this action in March 2021, alleging that for years, Defendants Noh and Gilani ran a telemarketed debt-relief business, Student Loan Pro, that purported to help borrowers manage their student loans. Defendants charged borrowers a hefty initial fee of $695 to $795, followed by monthly fees of $39. Defendants collected this money regardless of whether a borrowers' student-loan modification application or consolidation request had actually been approved and regardless of whether the borrower had made a first payment on the modified loan. In doing so, Defendants violated the Telemarketing Sales Rule, 16 C.F.R. §§ 310.4(a)(5), 310.3(b), and the Consumer Financial Protection Act, 12 U.S.C. § 5536(a)(1)(A). During their years of operation, Defendants took in millions of dollars in illegal fees from borrowers seeking help with their loans.

The Bureau seeks, among other relief, the return of this money to affected borrowers as well as appropriate injunctive relief to protect the public.

Defendants filed a motion to dismiss in July 2021. ECF No. 21. The Court denied that motion in January 2022. ECF No. 43. Defendants filed their answer, and then an amended answer, in February 2022. ECF Nos. 44, 48.

The parties are currently engaged in discovery. Discovery is scheduled to close at the end of March. ECF No. 91. Based on the record to date, the Bureau expects to file a motion for summary judgment at or before the close of discovery.

### Legal Standards

*Motion to dismiss.* "A claim should be dismissed under Rule 12(b)(6) where the plaintiff fails to assert a 'cognizable legal theory' or the complaint contains '[in]sufficient facts ... to support a cognizable legal theory.'" *Trujillo v. Morgan Truck Body, LLC.*, No. 5:21-cv-01873-JWH, 2022 WL 462631, at *3 (C.D. Cal. Feb. 14, 2022) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

*Motion for judgment on the pleadings.* "Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion" to dismiss "applies to its Rule 12(c) analog" seeking judgment on the pleadings. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

*Motion to stay proceedings.* In considering whether to exercise its discretion to stay proceedings, "the district court must evaluate the competing interests that will be affected." *Caballero v. Fuerzas Armadas Revolucionarias De Colombia*, No. 2:20-CV-07602-JWH, 2021 WL 4353243, at *2 (C.D. Cal. May 13, 2021) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). These factors include: "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues" in the case. *Id.* (quoting *Lockyer*, 398 F.3d at 1110).

Importantly, "'if there is even a fair possibility that the stay ... will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255).

1

**Argument**

**I.      The Court Should Deny the Motion to Dismiss as Untimely and Otherwise
Improper**

The Court should deny Defendants' motion to dismiss because it is grossly
untimely. Defendants state that the motion "is made pursuant to Federal Rule of Civil
Procedure 12(b)(6)." Mot. to Dismiss (MTD) at ii, ECF No. 124. Rule 12 requires that
such a motion "must be made *before pleading*." Rule 12(b) (emphasis added). Yet
Defendants filed their responsive pleading nearly one year ago and nearly 10 months
before filing the present motion to dismiss. *See* Answer, ECF No. 44; Am. Answer, ECF
No. 48.

Because Defendants did not file this Rule 12(b)(6) Motion "before pleading," as
required by Rule 12, the Court should deny it as untimely. *See, e.g.*, *Alpha Floors, Inc. v.
Dyno Exch.*, No. 8:16-cv-932-JLS, 2016 WL 9211646, at *1 (C.D. Cal. Sept. 23, 2016)
(denying motion to dismiss based on improper venue because defendants "filed an
answer and counterclaims prior to filing this Motion"); *cf. Pensmore Reinforcement
Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*, No. 5:21-cv-01556-JWH, 2022
WL 2464859, at *8 (C.D. Cal. July 5, 2022) (striking defense of failure to state a claim
and explaining that "[b]ecause [defendant] has already filed its responsive pleading—
indeed it has already filed an Answer and an Amended Answer—the time to raise that
defense has passed").

In addition, Defendants' motion is barred by Rule 12(g), which provides that "a
party that makes a motion under [Rule 12]" generally cannot "make another motion
under this rule raising a defense or objection that was available to the party but omitted
from its earlier motion." Rule 12(g)(2); *see also Aoki v. Gilbert*, No. 2:11-cv-02797-TLN,
2014 WL 3689345, at *6 (E.D. Cal. July 23, 2014) ("Generally speaking, if a party brings
multiple motions to dismiss under Rule 12(b), that party may not raise new grounds for
dismissal that were previously omitted."). Defendants previously filed a motion to

dismiss, ECF Nos. 21, 22, which made no mention of the Bureau's funding. Under Rule 12(g), Defendants cannot raise this argument in a second motion to dismiss now.[1] *See, e.g.*, *Adams v. Cole Haan, LLC*, No. 8:20-cv-00913-JWH, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021) (holding that defendant had waived argument by failing to raise it in earlier motion to dismiss, citing Rule 12(g)).

## II.   If the Court Instead Construes the Motion to Dismiss as One for Judgment on the Pleadings, It Should Deny the Motion as Meritless

"When a Rule 12(b) motion is untimely filed …, a court may deny the motion to dismiss as untimely, or it may consider the Rule 12(b)(6) motion to dismiss as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)." *Mazal Grp., LLC v. Barak*, No. 2:18-cv-4983-DMG, 2018 WL 11352629, at *1 (C.D. Cal. Dec. 27, 2018) (brackets and quotation marks omitted).

If the Court chooses to construe Defendants' motion to dismiss as a motion for judgment on the pleadings, it should deny the motion on the merits. Defendants' claim that the way Congress chose to fund the Bureau's operations violates the Appropriations Clause is contrary to constitutional text, binding Supreme Court precedent, and long historical practice. And even if Defendants' claim had validity (which it does not), that still would not require dismissal here.

### A. The Bureau's Statutory Funding Mechanism Is Constitutional

When it established the Bureau, Congress chose to fund the Bureau's operations through an authorization in the Bureau's organic statute rather than through annual spending bills, just as Congress has done for numerous other agencies and programs. By statute, the Bureau's funds come from the earnings of the Federal Reserve System, of which the Bureau is a part. *See* 12 U.S.C. §§ 5491(a), 5497(a). For fiscal years 2013 and

---

[1] Rule 12(g) would not have barred Defendants from raising their funding argument in a motion for judgment on the pleadings under Rule 12(c), but Defendants did not pursue that option. *See* Rule 12(g)(2), 12(h)(2)(B).

later, Congress capped the amount the Bureau can draw at $597.6 million. *See id.*
§ 5497(a)(2)(A)(iii). (This amount represents 12 percent of the total operating expenses
of the Federal Reserve System as reported in 2009.) The capped amount is then adjusted
annually based on a particular measure of inflation. *Id.* § 5497(a)(2)(B).[2]

This statutory funding authorization is wholly consistent with the text of the
Appropriations Clause, Supreme Court precedent interpreting the Clause, and historical
practice. The Appropriations Clause provides that "[n]o Money shall be drawn from the
Treasury, but in Consequence of Appropriations made by law." U.S. Const. Art. I, § 9,
cl. 7. As the Supreme Court has long emphasized, the "command of the Appropriations
Clause" is "straightforward and explicit": "'It means simply that no money can be paid
out of the Treasury unless it has been appropriated by an Act of Congress.'" *OPM v.
Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301
U.S. 308, 321 (1937)). "[I]n other words, the payment of money from the Treasury must
be authorized by a statute." *Id.*

Defendants do not dispute, nor could they, that the Bureau's funding is so
authorized. *See* 12 U.S.C. § 5497(a)-(c). The Appropriation Clause's "straightforward
and explicit" command was therefore satisfied when Congress appropriated money for
the Bureau by passing a statute authorizing the Bureau to spend funds to carry out its
statutory duties and making available a source of funds for it to do so. That alone
forecloses Defendants' claim here.

While the Bureau's funding is not set through annual spending bills, the
Appropriations Clause does not require annual appropriations. *Cf.* U.S. Const. Art. I, § 8,
cl. 12 (limiting appropriations for the Army—but not for any other purpose—to no more
than two years). Indeed, since the Founding Era, Congress has chosen to fund important

---

[2] In fiscal year 2022, the inflation-adjusted amount the Bureau could receive was
approximately $734 million. Defendants thus are off by nearly a billion dollars when they
assert that the Bureau has a "$1.7 billion budget." MTD at 10.

programs through sources other than annual spending bills. *See, e.g.,* An act to establish the Post-Office and Post Roads within the United States, 1 Stat. 232 (1792) (funding the Post Office through postage rates); An act for the better government of the Navy of the United States, 2 Stat. 45, 52-53 (1800) (funding "the payment of pensions and half pay" to sailors through proceeds from captured enemy vessels); National Bank Act of 1863, 12 Stat. 665, 670 (funding the Office of the Comptroller of the Currency through assessments on banks); *see also Cincinnati Soap*, 301 U.S. at 321 (rejecting Appropriations Clause challenge to a non-time-limited spending authorization not enacted as part of an annual spending bill).

Courts have recognized that "Congress can, consistent with the Appropriations Clause, create governmental institutions reliant on fees, assessments, or investments rather than the ordinary appropriations process." *PHH Corp. v. CFPB*, 881 F.3d 75, 95 (D.C. Cir. 2018) (en banc), *abrogated on other grounds by Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). Today, there are numerous such agencies. *See, e.g.*, 12 U.S.C. § 16 (Office of Comptroller of Currency); *id.* § 243 (Federal Reserve Board); *id.* § 1755 (National Credit Union Administration); *id.* §§ 1815(d), 1820(e) (FDIC); *id.* § 4516 (Federal Housing Finance Agency). The Bureau's funding is, if anything, *more* constrained than that of these other agencies because the Bureau's funding is statutorily capped, whereas other agencies have no such cap and are empowered to set for themselves the amount of the fees they collect. *See PHH Corp.*, 881 F.3d at 95.

Indeed, every court—save one, discussed below—that has considered the issue has upheld the constitutionality of the Bureau's method of funding. *See, e.g.*, *PHH Corp.*, 881 F.3d at 95-96; *CFPB v. D & D Mktg., Inc.*, No. 2:15-cv-9692-PSG, 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014); *CFPB v. TransUnion*, No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022); *CFPB v. Ctr. for Excellence in Higher Educ.*, No. 2:19-cv-00877, 2022 WL 4182301, at *6 (D. Utah Sept. 13, 2022); *CFPB v. Citizens Bank, N.A.*,

504 F. Supp. 3d 39, 57 (D.R.I. 2020); *CFPB v. Fair Collections & Outsourcing, Inc.*, No.
8:19-cv-2817, 2020 WL 7043847, at *7-9 (D. Md. Nov. 30, 2020).[3] As these courts have
repeatedly explained, "the funding structure of the CFPB does not violate the
Appropriations Clause." *D & D Mktg.*, *Inc.*, 2016 WL 8849698, at *5.

### B. Defendants' Contrary Arguments Are Wrong

Defendants' motion relies almost entirely on a single out-of-circuit decision, and a
related concurrence from the same court, which held that the Bureau's funding violates
the Appropriations Clause. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th
616, 635-43 (5th Cir. 2022) ("*CFSA*"), *petition for cert. pending*, No. 22-448; *CFPB v.
All Am. Check Cashing, Inc.*, 33 F.4th 218, 220-45 (5th Cir. 2022) (en banc) (Jones, J.,
concurring). But the *CFSA* decision, which does not bind this Court, was mistaken, as are
Defendants' arguments based on it.

*First*, following *CFSA*, Defendants try to minimize binding Supreme Court
precedent holding that the Appropriation Clause's "straightforward and explicit
command … 'means simply that no money can be paid out of the Treasury unless it has
been appropriated by an act of Congress.'" *Richmond*, 496 U.S. at 424 (quoting
*Cincinnati Soap*, 301 U.S. at 321). Defendants disagree that an act of Congress
authorizing the Executive to spend money from a specified source is enough. Instead,
they say, "an actual *appropriation*" is required. MTD at 17. Defendants do not explain
what else is needed for a statute to constitute an "actual" appropriation.

Contrary to Defendants' view, the Supreme Court has made clear that the
Appropriations Clause requires only that Congress authorize spending by statute and
make a source of funds available for such spending. *See Richmond*, 496 U.S. at 424
("Money may be paid out only through an appropriation made by law; *in other words*, the

---

[3] *Accord CFPB v. Think Finance LLC*, No. 17-cv-127, 2018 WL 3707911, at *1-2 (D.
Mont. Aug. 3, 2018); *CFPB v. Navient Corp.*, No. 3:17-cv-101, 2017 WL 3380530, at
*16 (M.D. Pa. Aug. 4, 2017); *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 896-
97 (S.D. Ind. 2015).

payment of money from the Treasury must be authorized by a statute." (emphasis
added)). And as explained above, that precedent is consistent with longstanding
congressional practice. *See supra* pages 6-7; *see also* Gov't Accountability Office,
*Principles of Federal Appropriations Law*, 2-22 (4th ed. rev. 2016) ("*GAO Redbook*")
("[A]ny time the Congress specifies the manner in which a Federal entity shall be funded
and makes such funds available for obligation and expenditure, that constitutes an
appropriation, whether the language is found in an appropriation act or in other
legislation."), *available at* https://www.gao.gov/assets/2019-11/675709.pdf.

Defendants complain that the Supreme Court's holdings in this area mean that "no
executive agency's funding structure could ever run afoul of the Appropriations Clause"
so long as its spending was authorized by statute. MTD at 17. But this Court need not
decide that issue because Section 5497 does far more than simply authorize spending: It
prescribes the source, amount, duration, and purpose of the CFPB's funding. In any
event, Defendants ignore that the Appropriations Clause "was intended as a restriction
upon the disbursing authority of the Executive department." *Cincinnati Soap*, 301 U.S. at
321. "However much money may be in the Treasury at any one time, not a dollar of it can
be used in the payment of any thing not … previously sanctioned" by Congress. *Reeside
v. Walker*, 52 U.S. 272, 291 (1850). Where the Executive spends money as sanctioned by
Congress through a duly enacted law, there is no Appropriations Clause problem.

*Second*, Defendants claim that the Bureau's funding is "double insulated" from
congressional oversight because it comes from the annual receipts of the Federal Reserve
System—in contrast, apparently, to coming directly from Treasury. MTD at 8-10. That
claim does not withstand scrutiny. The Bureau is part of the Federal Reserve System, 12
U.S.C. § 5491(a), and is funded through the System's receipts, which are generated from
various sources, including interest on securities and loans as well as fees, *see generally
id.* §§ 342-361. (Congress has funded the Federal Reserve *Board*—also part of the
Federal Reserve System—from exactly the same source for more than a century. *See* 38

Stat. 251, 261 (1913).) The fact that, under statute, it is the Board—rather than, say, the Secretary of Treasury—that performs the ministerial role of actually transferring funds to the Bureau is irrelevant to congressional control. *See* 12 U.S.C. § 5497(a). The source of the Bureau's funds makes no difference to Congress's ability to oversee how the Bureau spends that money to carry out its duties or its ability to pass a law altering the Bureau's duties or funding.

*Third*, Defendants highlight two specific provisions in the Bureau's statute. MTD at 9-10, 12-13. The statute provides that the money the Bureau draws for its operations be held in an account at a Federal Reserve bank. 12 U.S.C. § 5497(b)(1)-(2). Defendants argue that because the money is held in an account at a Federal Reserve bank, rather than "held in a Treasury account," the Bureau's spending "eludes Congressional oversight." MTD at 9. Defendants fail to explain why the location of the account would make any difference to Congress's oversight powers—let alone somehow mean that the Bureau's spending violates the Appropriations Clause. It does not.

Defendants also focus on a provision stating that the money the Bureau draws "shall not be construed to be Government funds or appropriated monies." 12 U.S.C. § 5497(c)(2). Defendants seem to take this provision as a self-defeating declaration that Section 5497 violates the Appropriations Clause. It is not. Section 5497(c) does not purport to describe the status of the Bureau's funds under the Constitution; instead, it merely exempts those funds from *statutes* that impose limitations on "the use of all appropriated amounts." *GAO Redbook*, 2-22, 2-25–2-26 & n.29. Congress has included similar provisions in the statutes for the Federal Reserve Board, 12 U.S.C. § 244, OCC, *id.* §§ 16, 481, and Farm Credit Administration, *id.* § 2250(b)(2), among other agencies.

Similarly, the court in *CFSA* took issue with another part of the Bureau's statute, which states that "funds derived from the Federal Reserve System … shall not be subject to review by the Committees on Appropriations of the House of Representatives and the Senate." 12 U.S.C. § 5497(a)(2)(C); *see CFSA*, 51 F.4th at 639. That provision, however,

simply allocates authority among different congressional bodies. The Constitution does
not mandate that Congress establish any particular committees, let alone require that they
be given particular authorities. *Cf.* U.S. Const. Art. I, § 5, cl. 2 (authorizing "[e]ach
House" to "determine the rules of its proceedings"). The House and Senate
Appropriations Committees did not even exist until the 1860s. *See* Committee on
Appropriations, 1867-2008, S. Doc. No. 110-14, at 5 (2008), *available at*
https://www.govinfo.gov/content/pkg/CDOC-110sdoc14/pdf/CDOC-110sdoc14.pdf.

   And while Congress chose to circumscribe the authority of particular committees
to review Bureau funds, Congress itself is fully able to supervise the Bureau's spending,
including because of several provisions in the Bureau's statute ensuring its visibility into
the agency's use of funds. *See* 12 U.S.C. §§ 5496(a)-(b), (c)(2), 5497(a)(5), (e)(4)
(requiring regular audits, reports, and appearances before Congress concerning Bureau
spending).

   *Fourth*, and finally, Defendants suggest that the Bureau's statutory mission or its
authorities render it meaningfully different from the many other agencies that are funded
similarly. *See* MTD at 19-20. To begin, Defendants' comparison of the Bureau to other
agencies is not accurate. They claim, for example, that agencies such as the Federal
Reserve Board "do not wield remotely comparable enforcement or regulatory authority"
to the Bureau. *Id.* at 20. In reality, the Board's "every act has global consequence," *Seila
Law*, 140 S. Ct. at 2239 (Kagan, J., concurring in the judgment in part and dissenting in
part), and other similar agencies play critical roles in assuring the stability of the financial
system.

   Several of these agencies do so by exercising significant rulemaking and
enforcement authority. *See, e.g.*, 12 U.S.C. §§ 1818, 1828 (granting such authority to the
Board, the OCC, and the FDIC). And most of the CFPB's authorities were themselves
inherited from such agencies. *See id.* § 5581 (describing functions transferred from the
Board, the OCC, the FDIC, and the NCUA). Although many of these agencies are headed

by multimember commissions, *see* MTD at 20, others, such as the OCC and the Federal Housing Finance Agency are, like the Bureau, headed by single Directors who the President may remove at will. *See id.* § 2 (OCC), § 4512 (FHFA). In short, Defendants' argument, if accepted, would appear to call into question the funding mechanisms of numerous other agencies of long standing.

More fundamentally, Defendants' invitation to a comparative exercise is incompatible with *Collins v. Yellen*, 141 S. Ct. 1761 (2021). *Collins* explained that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies." *Id.* at 1785. Because no "clear standard" exists to "distinguish agencies" based on the amount of power they wield, courts should avoid such comparisons when assessing separation-of-powers questions. *Id.* at 1784. That exercise is even less appropriate in the Appropriations Clause context because the text of the Clause is categorical and does not depend on the particular functions or authorities of the federal entity at issue.

## C. In Any Event, Dismissal Would Not Be the Proper Remedy for any Appropriations Clause Concern

Even if Defendants could show that the Bureau's statutory funding authorization somehow violated the Appropriations Clause, the proper remedy would not be dismissal of this case. *Contra* MTD at 13-16.

Defendants rely on *CFSA* for the proposition that "while the CFPB may have the necessary authority [to pursue this action], it lacks the 'lawful money necessary'" to do so. *Id.* at 15. But *CFSA*'s remedial analysis was badly mistaken. To begin, the Fifth Circuit erred in failing to conduct a severability analysis assessing whether the core provision authorizing the Bureau to spend funds could remain intact even if the other features that the court found problematic—such as the provision stating that Bureau funds "shall not be construed to be Government funds or appropriated monies," 12 U.S.C. § 5497(c)(2)—were invalid. The remedy for any problem with the funding provisions

thus could involve simply severing particular portions while leaving the rest of the statute in place. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." (quotation marks omitted)).

The Fifth Circuit held that under the Supreme Court's decision in *Collins v. Yellen*, a challenger can obtain relief only if "the unconstitutional ... [funding] provision inflicted harm." *CFSA*, 51 F.4th at 643. But the funding provisions did not cause any harm (there or here) because there has been no showing that the Bureau would not have taken the challenged action if it had been funded by (what Defendants would consider to be) a "valid" appropriation. *See Collins*, 141 S. Ct. at 1789; *id.* at 1801-02 (Kagan, J., concurring in the judgment in part and dissenting in part). Nor would vacating the challenged action actually cure any Appropriations Clause violation—it would not, for example, undo the Bureau's expenditures on the salaries and other expenses associated with the action, or restore any funds to the public fisc. That is presumably why when Congress has established remedies for unauthorized Executive Branch spending, it has not authorized the unwinding of otherwise-valid government actions. *See* 31 U.S.C. §§ 1349(a), 1350.

Defendants thus have failed to demonstrate that dismissal would be required even if they were to prevail on their constitutional attack. And certainly dismissal *with prejudice* would be unwarranted in that scenario, *contra* MTD at 2, as the Bureau could resume this prosecution once it received a new, constitutionally valid appropriation of funds.

## III.   The Court Should Deny the Motion to Stay Proceedings

If Defendants cannot win dismissal, they hope at least to win delay. They ask the Court to halt all proceedings "pending a decision by either the Ninth Circuit [in *CFPB v. Nationwide Biweekly Admin., Inc.*, Nos. 18-15431, 18-15887] or the United States

Supreme Court [in *CFPB v. CFSA*, No. 22-448 (petition for cert. filed Nov. 14, 2022)]."
Proposed Order at 2, ECF No. 131-1; *see also* Mot. to Stay (Stay Mot.), ECF No. 125.
Defendants, however, have failed to demonstrate that this law enforcement action should
be indefinitely delayed awaiting events in those cases.

### A. Staying Proceedings Would Not Promote Judicial Economy or the Efficient Resolution of This Case

Defendants have not shown that further developments in either *CFSA* or
*Nationwide* are likely to bar the Bureau from pressing forward with its claims in this case.
Their proposed stay would merely delay resolution of this public enforcement action
without benefiting judicial economy.

In *CFSA*, the government has asked the Supreme Court to review the Fifth
Circuit's outlier ruling that the Bureau's statutory authorization to spend money violates
the Appropriations Clause. Defendants have failed to demonstrate that this action should
be halted to await further events in that case. As described above, *supra* pages 7-9, the
Fifth Circuit's ruling is contrary to binding Supreme Court precedent as well as the
decisions of every other court (before and since the Fifth Circuit issued its decision) to
have considered the validity of the Bureau's funding provisions. Defendants offer no
basis to expect that, rather than simply correcting the Fifth Circuit's error, the Supreme
Court will reinterpret the meaning of the Appropriations Clause in a way that could call
into question the validity of numerous other agencies and federal programs that have long
been funded through means other than annual spending bills.

Indeed, the Supreme Court has already considered the Bureau's funding provisions
in the context of a separation-of-powers challenge to the Bureau and gave no sign that it
saw those provisions as independently problematic. In *Seila Law*, the Court closely
examined the Bureau's funding provisions, 140 S. Ct. at 2193-94, 2204, which petitioner
Seila Law had claimed "ceded" Congress's "power over the purse," Br. for Pet'r at 43-
43, *Seila Law*, 2019 WL 6727093 (U.S. 2019). Yet the only significance the Court

accorded these provisions is that they further showed the need that the Director be removable at will by the President. *See* 140 S. Ct. at 2204.

The Court said nothing to suggest the Bureau's funding is inconsistent with the Appropriations Clause or otherwise problematic on its own. To the contrary, the Court emphasized that "[t]he *only* constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal" and that "[i]f the Director were removable at will by the President, the constitutional violation would disappear." *Id.* at 2209 (plurality op.) (emphasis added). "The agency may therefore continue to operate," the Court held, with its Director removable at will. *Id.* at 2192 (majority op.). The Court thus "strongly implied that the CFPB's source of funding was not a problem by itself." *Rop v. FHFA*, 485 F. Supp. 3d 900, 940 (W.D. Mich. 2020), *rev'd and remanded on other grounds*, 50 F.4th 562 (6th Cir. 2022); *accord Ctr. for Excellence in Higher Educ.*, 2022 WL 4182301, at *6; *Fair Collections & Outsourcing*, 2020 WL 7043847, at *9.

Even if the Supreme Court were to hold that the Bureau's funding is invalid, ordinary remedial principles would not call for invalidating past Bureau actions (including the filing of this case) on that basis. *See supra* Sec. II.C. In fact, invalidating some or even all of the Bureau's past actions would be a radical departure from the more tailored remedial approach the Supreme Court has consistently adopted in recent separation-of-powers cases. *See, e.g.*, *Collins*, 141 S. Ct. at 1787-88 (holding that a challenger must show that an invalid removal provision actually caused it harm in order to challenge specific agency action on the basis of the removal provision); *Free Enter. Fund*, 561 U.S. at 513 (rejecting challengers' claim to "broad injunctive relief" based on an invalid statutory removal provision but agreeing "they are entitled to declaratory relief" that the provision is invalid).

Defendants' claim that a stay will promote the efficient resolution of this case thus rests on multiple, highly speculative assumptions, including that the Supreme Court will take the case and hold unconstitutional the same funding provisions it examined in *Seila*

1  *Law*, and that the Court will order a sweeping remedy that would require invalidating the

2  Bureau's filing of this action. This case should not be put on hold indefinitely based on

3  that chain of possible future events. *See Prime Healthcare Servs.-San Dimas, LLC v.*

4  *Price*, No. 2:16-cv-08101-ODW, 2017 WL 10581094, at *3 (C.D. Cal. June 29, 2017)

5  (denying motion to stay based on other cases that would not "necessarily dispose of the

6  claims here").

7  In recent years, similar uncertainty led a number of district courts to deny similar

8  requests to stay Bureau enforcement actions pending the Supreme Court's decisions in

9  *Seila Law*, where the Supreme Court considered the validity of the removal provision in

10  the Bureau's statute, and *Collins*, where the Supreme Court considered whether an

11  invalid removal provision means that past agency actions were invalid. *See CFPB v.*

12  *Certified Forensic Loan Auditors, LLC*, No. 2:19-cv-07722-ODW, 2020 WL 1181499, at

13  *2 (C.D. Cal. Feb. 21, 2020) (denying stay and explaining that "it appears unlikely that

14  the Bureau's claims will be disturbed" by an adverse ruling in *Seila Law* because "the

15  express language of the statute calls for simply severing the [removal] provision … while

16  leaving the rest of the statute in place"); *Fair Collections & Outsourcing*, 2020 WL

17  7043847, at *2-3 ("Given the uncertainty surrounding the effect a decision in [*Collins*]

18  will have on the present case, the Court will deny Defendant's Motion to Stay.").

19  Indeed, other courts have denied motions to stay or dismiss other Bureau

20  enforcement actions that were based specifically on *CFSA*. *See CFPB v. TransUnion*,

21  No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022) (denying motion

22  to dismiss that was based in part on *CFSA* and allowing Bureau action to proceed); Order

23  Denying Stay, *CFPB v. Commonwealth Equity Grp., LLC*, No. 1:12-cv-10991 (D. Mass.

24  Dec. 15, 2022), ECF No. 93 (denying motion to stay Bureau action pending resolution of

25  petition in *CFSA*).

26  Nor it is established at this point that Defendants' requested delay based on *CFSA*

27  would last only until June. *Contra* Stay Mot. at 8. Although the government has asked the

28

Supreme Court to hear and decide that case this term, the respondents in *CFSA* have opposed the government's proposed timetable and argued that the Court should delay any review until next term. *See* Resp'ts' Mot. to Extend Time at 2, *CFSA* (Nov. 21, 2022), *available at* http://www.supremecourt.gov/DocketPDF/22/22-448/247050/ 20221121105157161_22-448%20BIO%20Extension%20Letter.pdf. If respondents had their way, that would potentially postpone final decision until June 2024, meaning a possible delay in this case of up to a year and a half, rather than the couple of months Defendants predict. *See generally Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is especially long or its term is indefinite, we require a greater showing to justify it.").

As for *Nationwide*, it is far from clear that a decision there will even address the Bureau's funding, as the defendants waived that argument by failing to properly raise it in their opening brief. *See, e.g.*, Bureau's May 12, 2022 28(j) Letter, *CFPB v. Nationwide* (explaining that the defendants' "undeveloped argument is waived"), ECF No. 105; Bureau's Supplemental Answering Br. at 3 n.2, *CFPB v. Nationwide* (same), ECF No. 115; *see also Floyd v. Filson*, 949 F.3d 1128, 1147 n.8 (9th Cir. 2020) (declining to address assertion for which appellant provided no "developed argument" in his opening brief).

The fact that the Bureau, in addition to pointing out in *Nationwide* that the funding challenge was waived, has also offered argument in the alternative that the challenge was meritless, *see* Stay Mot., Ex. B, ECF No. 125-2, does not indicate that the Ninth Circuit will excuse the defendants' waiver and reach the merits. In addition, the *Nationwide* defendants raised other arguments that they claim independently support dismissal and would not require the court to address the funding challenge.[4]

---

[4] The parties submitted briefing on the funding issue after the defendants raised it in response to the court's order for supplemental briefing on what effect, if any, *Seila Law*, *CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022), "or any other recent case" may

And even if the Ninth Circuit *were* to reach the funding argument, Defendants have failed to show a likelihood that the panel would endorse their view of the Appropriations Clause when that view is contrary to binding precedent. The panel members' views on the different question at issue in *CFPB v. Seila Law LLC*, 997 F.3d 837 (9th Cir. 2021)—which, after remand from the Supreme Court, concerned whether the Bureau could ratify an enforcement action filed while the Bureau's Director was purportedly insulated from at-will removal—shed no light here because that question (unlike the funding challenge) was not controlled by binding Supreme Court precedent at the time. *Contra* Stay Mot. at 9-11.

It would be particularly inappropriate to stay proceedings here at this point when this case has been pending for nearly two years already and the parties are nearing the end of discovery. *Cf. Pipe Restoration Techs., LLC v. Pipeline Restoration Plumbing, Inc.*, No. 8:13-cv-00499-CJC, 2015 WL 13918253, at *2 (C.D. Cal. Feb. 13, 2015) (denying stay where "the parties have been litigating this case for nearly two years … and [a] substantial amount of discovery … has already been conducted"). The remaining issues in this case appear to be appropriate for resolution at summary judgment, and the Bureau plans to file a motion for summary judgment at or before the close of discovery. There is no reason to postpone that effort, which could bring this case to a final resolution on the merits, for the uncertain length of time that Defendants propose.[5]

---

have "on the issues presented … in this case." Order of May 24, 2022, *Nationwide*, ECF No. 106. That order—which was issued before the Fifth Circuit decided *CFSA*—reveals nothing about what issues the Ninth Circuit believes were properly raised and are necessary to the resolution of that case.

[5] Another court in this District recently stayed a Bureau enforcement action pending a decision in *Nationwide*. *See* Order, *CFPB v. Rosen*, No. 2:21-cv-07492-VAP (C.D. Cal. Jan. 3, 2023), ECF No. 123. That decision, however, did not analyze whether the movant had demonstrated "a clear case of hardship or inequity" if denied a stay, as required under Supreme Court and Ninth Circuit precedent. *Landis*, 299 U.S. at 255; *see also Lockyer*, 398 F.3d at 1110 (holding that "being required to defend a suit, without more, does not

**B. A Stay Would Harm the Significant Public Interest and the Bureau's Interest in the Orderly and Prompt Resolution of this Action**

The Bureau filed this law enforcement action nearly two years ago to address Defendants' harmful and illegal practices in connection with the offering of student-loan debt-relief services.

 "[T]he public has a strong interest in vigorous enforcement of consumer protection laws." *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017), *aff'd*, 849 F.3d 1129 (D.C. Cir.). Halting all proceedings in this case "would harm the Bureau and the public interest" in the enforcement of the consumer laws at issue here. *See Certified Forensic Loan Auditors*, 2020 WL 1181499, at *3 (denying similar request to stay of Bureau enforcement action).

That harm is not theoretical. The stay sought by Defendants would mean more time in which Defendants' assets may be depleted, more time in which Defendants are not subject to the injunctive relief that the Bureau seeks for the public's protection, and more time consumers would have to wait for redress. And because "'[d]elay inherently increases the risk that witness memories will fade and evidence will become stale,'" *Edwards v. Alorica, Inc.*, No. 8:19-cv-02124-JWH, 2020 WL 11613847, at *2 (C.D. Cal. Dec. 2, 2020) (quoting *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007)), a stay could make it harder down the road for the Bureau to secure any relief for consumers. That risk is more acute here given the length of time that has already passed since Defendants' violations began. *See, e.g.*, Compl. ¶11 (alleging that Student Loan Pro's operations began in 2015).

---

constitute a 'clear case of hardship or inequity' within the meaning of *Landis*"). The decision also too readily dismissed "the possible damage that may result from granting as stay" as "minimal." *Rosen* Order at 6. As explained below, *infra* Sec. III.B., the harm that would arise from the indefinite stay that Defendants seek here is very real.

### C. Allowing This Case to Move Forward in the Ordinary Course Would Cause Defendants no Cognizable Harm

Because there is, at minimum, "a fair possibility" that the stay Defendants seek "will work damage to some one else," Supreme Court and Ninth Circuit precedent requires that Defendants "must make out a clear case of hardship or inequity in being required to go forward" in order to secure a stay. *Landis*, 299 U.S. at 255; *accord Lockyer*, 398 F.3d at 1112; *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (holding that district court abused its discretion in granting stay where stay would harm non-moving party and movant had "failed to establish a sufficient case of hardship" under *Landis*). Defendants cannot make the required showing.

Defendants claim they will suffer hardship by "incur[ring] significant costs" from having to defend this suit. Stay Mot. at 13; *see also id.* at 16. But litigation costs will always result when a party is denied a stay. Accordingly, the Ninth Circuit has squarely held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*" that would justify a stay. *Lockyer*, 398 F.3d at 1112; *accord Dependable Highway*, 409 F.3d at 1066.

Defendants' claim of harm is also undermined by their delay in seeking a stay: The appeal in *Nationwide* has been pending for the entirety of this litigation, yet Defendants did not seek a stay based on that appeal until almost two years into these proceedings. *Cf. Avalonbay Communities, Inc. v. Contractors Bonding & Ins. Co.*, No. 2:21-cv-04389-SB, 2022 WL 2903142, at *2 (C.D. Cal. May 6, 2022) (denying stay where movant "waited a full year" before requesting a stay based on other proceedings that "ha[d] been pending for the entire duration of this case"). In addition, because the close of discovery is fast approaching and the Bureau expects to move for summary judgment soon, the costs to Defendants of continuing to litigate this case to judgment should not be especially onerous.

Defendants offer declarations by the two individual Defendants stating that they have incurred not only financial costs but "emotion burden" because of this litigation. ECF Nos. 125-5, 125-6. The Bureau respectfully submits that a defendant's purported distress at having to answer well-pleaded allegations that the defendant engaged in repeated and lucrative violations of federal law is not reason to stay a case. *Cf. FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (holding that the "expense and annoyance" of litigation does not constitute irreparable injury and is instead "part of the social burden of living under government" (quotation marks omitted)).

## Conclusion

For the foregoing reasons, the Court should deny Defendants' Motions.

Dated: January 12, 2023

/s/ Mary K. Warren

Mary K. Warren
Alexander Johnson
Kevin E. Friedl (*pro hac vice application pending*)
Senior Litigation Counsel
Consumer Financial Protection Bureau
1700 G St., NW
Washington, DC 20552
Tel: (202) 435-7815

Local Counsel:

Owen Martikan – CA Bar #177104
Consumer Financial Protection Bureau
301 Howard St., Ste. 1200
San Francisco, CA 94105
Tel: (415) 844-9790
Email: owen.martikan@cfpb.gov

*Attorneys for Plaintiff Consumer Financial Protection Bureau*

## Certificate of Compliance

I certify that this brief contains 6956 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 12, 2023

/s/ Mary K. Warren
Mary K. Warren (*pro hac vice*)

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

I hereby certify that on January 12, 2023, I electronically filed Plaintiff's Consolidated Opposition to Motion to Dismiss and Motion to Stay with the Clerk of the Court using CM/ECF, causing a Notice of Electronic Filing to be sent to counsel for Defendants.

Dated: January 12, 2023

/s/ Mary K. Warren
Mary K. Warren (*pro hac vice*)

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*